IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

          Respondent/Plaintiff,

v.

                                            Civil No. 11-0780 JEC/RHS
                                            Criminal No. 10-2976 JEC

HECTOR RAUL CASAS-ARROYOS,

          Petitioner/Defendant.

## PROPOSED FINDINGS AND RECOMMENDATIONS

This is a proceeding on a Motion to Vacate, Set Aside or Correct Sentence pursuant to

28 U.S.C. § 2255.  On August 31, 2011, Petitioner, Hector Raul Casas-Arroyos, filed his motion

attacking the judgment and sentence entered by the United States District Court for the District

of New Mexico in United States of America v. Hector Raul Casas-Arroyos,  No. CR 10-2976

JEC  [CV Doc. 1].  The United States of America ("government") responded on October 12,

2011

[CV Doc. 8].  After review of the Petitioner's arguments, documents submitted for judicial

review and the relevant authorities, it is recommended that the motion be denied and the case

dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 27, 2010, Petitioner was arrested by Border Patrol Agents in Luna County,

New Mexico [CR Doc. 12 at 4].  Petitioner admitted to the agents that he was a citizen of the

Republic of Mexico who unlawfully entered the United States [CR Doc. 1].  On September 29,

2011, a Criminal Complaint was filed charging Petitioner with "re-entry of a removed alien, in

violation of 8 U.S.C. § 1326(a)(1) and (b)" [CV Doc. 8 at 4].   This Criminal Complaint charges

that Immigration records indicate that Petitioner was previously deported from the United States

to Mexico on September 24, 2009 [CR Doc. 1].   The Criminal Complaint further charges that

"[t]here was no evidence that Petitioner received permission from the appropriate authorities to

reapply for admission in the United States."   Id.   In connection with the deportation, criminal

records were compiled which reflected that Petitioner was previously convicted of felony

burglary in Sarasota, Florida.   Id.

On September 29, 2010, Kenneth Gleria, Esq. was appointed defense counsel [CR Doc.

4].   On October 28, 2010, Petitioner entered into a Non-Standard Fast Track Plea Agreement

("Plea Agreement") with the government [CR Doc. 12].   That same date at the change of plea

hearing, Petitioner entered his plea of guilty to an information charging him with re-entry of a

removed alien in violation of 8 U.S.C. § 1326(a) and (b).   Id.   Petitioner is a native Spanish

speaker.   An interpreter was utilized for translation at the plea hearing [PH Tr. 2].   Petitioner

testified under oath that he understood the terms of the Plea Agreement [PH Tr. 4:17-23].   He

further testified that he was waiving "certain appellate, post-conviction rights" [PH Tr. 6:16-19].

The only issue which Petitioner did not knowingly and intentionally waive is the ability to attack

his conviction for ineffective assistance of counsel [CR Doc. 12 at 6].

On October 28, 2010, Petitioner appeared before the assigned United States Magistrate

Judge, to testify as to the Plea Agreement in detail and to confirm Petitioner's understanding of it

[CR Doc. 33, Plea Hearing Transcript (PH Tr)].   Petitioner testified, through the services of a

duly certified Spanish speaking court interpreter, that he reviewed the Plea Agreement with his

attorney in Spanish before signing it and that he understood the terms of the Agreement

[PH Tr. 4:17-23].  Petitioner testified that he was satisfied with the representation of his attorney [PH Tr. 3:13-15].  He further testified that he was not coerced to plead guilty nor were any promises made to him other than those contained in the Plea Agreement [PH Tr. 4:24-25; 5:1-5]. Petitioner admitted that he was guilty of the charges and that he understood his rights to a jury trial, to confront and cross-examine witnesses, to remain silent and not be compelled to testify against himself, to present evidence and to testify, and to compel attendance of witnesses who would testify on his behalf [PH Tr. 5:6-20].  Petitioner testified that he understood that by pleading guilty he was waiving all of these rights.  Id.  The Magistrate Judge advised Petitioner that the maximum statutory penalty the Court could impose for his violation was twenty years incarceration [PH Tr. 5:21-25; 6:1-3].  The Magistrate Judge further advised Petitioner that "the sentencing judge is going to calculate the applicable sentencing range and consider that range and possible departures from that range under the sentencing guidelines along with other sentencing factors set out in the law" [PH Tr. :9-15].  Petitioner admitted to all of the facts contained in the Plea Agreement and entered his guilty plea [PH Tr. 6:23-25; 7:3-8, 12-25].  The Court accepted Petitioner's guilty plea as a "knowing and voluntary plea supported by independent evidence of the elements of the offense charged" and found Petitioner guilty of the offense [PH Tr. 7:18-25].        According to the Presentence Investigation Report (PSR), the maximum penalty for Petitioner's offense was twenty (20) years incarceration [PSR at 19]. Petitioner received a 16-level enhancement for the prior conviction for felony burglary because it is "a crime of violence" for the purposes of computing the offense level [PSR at 4].  The PSR reflects that Petitioner received certain reductions, including a reduction for acceptance of responsibility, which resulted in a four-level reduction [PSR at 6].  Ultimately, the PSR

determined that Petitioner's offense level was 20 and his criminal history category was IV.  Id.

Based on these determinations, the PSR recommended an Advisory Guideline sentencing range

from 51 months to 63 months.  Id.

On March 23, 2011, Petitioner appeared before the United States District Judge for

sentencing [CR Doc. 32, Sentencing Hearing Transcript (SH Tr.)].  The Sentencing Judge

sentenced Petitioner to a term of imprisonment of 51 months to be followed by supervised

release for a period of three years [SH Tr. 6:8-12].  The Court entered judgment on March 23,

2011 [CR. Doc. 24].

On August 31, 2011, Petitioner filed the instant § 2255 motion asserting that he received

ineffective assistance of counsel and that he entered into his plea involuntarily [CV Doc. 1].

## LEGAL STANDARD

A district court may grant relief under § 2255 if it determines that "the judgment was

rendered without jurisdiction, or that the sentence imposed was not authorized by law or

otherwise open to collateral attack, or that there has been such a denial or infringement of the

constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."

28 U.S.C. § 2255.  Petitioner must demonstrate that a defect in the proceedings resulted in "a

complete miscarriage of justice."  Davis v. United States, 417 U.S. 333, 346 (1974).

The crux of Petitioner's § 2255 motion, and the three claims he makes therein, is that he

was denied effective assistance of counsel and therefore the Plea Agreement and sentence should

be set aside. [CV Doc.1.]  To succeed on a claim of ineffective assistance of counsel, Petitioner

must show: (1) that counsel's performance fell below an objective standard of reasonableness as

measured against prevailing professional norms. . ." and (2) that there is a reasonable probability

that the outcome would have been different but for counsel's inadequate performance.  Sandoval v. Ulibarri, 548 F.3d 902, 909 (10th Cir. 2008) (*citing* Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)) In order to satisfy the first Strickland prong, Petitioner must identify "acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Strickland, 466 U.S. at 690.  Petitioner must demonstrate that his counsel's performance fell below an objective standard of reasonableness.  The Court determines "whether, in light of all the circumstances, the identified acts or omisions were outside the . . . range of professionally competent assistance." Id.  There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment.  Strickland, 466 U.S. at 688.  "Conclusory allegations are insufficient to support an ineffective assistance of counsel claim."  United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994).

Finding prejudice under the second Strickland prong, requires that the Petitioner demonstrate that his attorney's alleged deficient performance prejudiced the defense.  Strickland, 466 U.S.  at 687.  In the context of asserting ineffective assistance of counsel for a plea agreement, Petitioner is required to show that "counsel's deficient performance affected the outcome of the plea process and there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  United States v. Clingman, 288 F.3d 1183, 1186 (10th Cir. 2002) (*citing*  Miller v. Champion, 262 F.3d 1066, 1072 (10th Cir. 2001), *cert. denied*, 534 U.S. 1140, 122 S.Ct. 1092, 151 L.Ed.2d 990 (2002)).

In applying the two-part Strickland test, a court may address the performance and prejudice components in any order.  Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) (*citing* Strickland, 466 U.S. at 697); Boltz v. Mullin, 415 F.3d 1215, 1222 (10th Cir. 2005).  The

Court need not address both components if the petitioner fails to make sufficient showing of either.  Id.

## ANALYSIS

### Claim One:  Plea Was Not Voluntary

In Claim One, Petitioner asserts that his guilty plea was "unlawfully induced or not made voluntarily" [CV Doc. 1 at 5].  Petitioner's assertion that his guilty plea was not voluntary is unpersuasive.  Petitioner's acceptance of the Plea Agreement and his testimony under oath at the change of plea hearing completely contradicts his assertion.  Petitioner testified that the Plea Agreement was read and explained to him in Spanish [PH Tr. 4:17-20].  He confirmed that he had enough time to review the Plea Agreement.  Id.  He testified that he discussed the Plea Agreement with his attorney before signing.  Id.  Petitioner testified that he entered into the Plea Agreement voluntarily, that he was not coerced, and that promises were not made other than those contained in the Plea Agreement [PH Tr. 4:24-25; 5:1-18].  He also testified that he understood the Plea Agreement [PH Tr. 4:21-23].

The record reflects that the Magistrate Judge advised the Petitioner of the maximum statutory penalty and then asked if the Petitioner understood the maximum statutory penalty that could be imposed for his offense, which he did [PH Tr. 5:21-25; 6:1-3].  Petitioner testified that the factual basis for his plea, contained in paragraph 10 of the Plea Agreement, was correct [PH Tr. 7:3-8].  The Magistrate Judge specifically asked Petitioner, "Have you gone over the facts in paragraph ten with your attorney?"  Id.  Petitioner testified, "Yes, sir."  Id.  The Magistrate Judge then asked "Do you agree that that's what occurred here and that that's what you did?" [PH Tr. 7:6-8].  Petitioner then testified, "Yes, sir."  Id.  When the Magistrate Judge

questioned Petitioner how did he plead, Petitioner testified, "Yes. I am guilty" [PH Tr. 7:12-17]. Based on this colloquy, the Magistrate Judge made the specific finding that the "plea of guilty is a knowing and voluntary plea supported by independent evidence of the elements of the offense charged" [PH Tr. 7:18-25].

Petitioner also appears to allege ineffective assistance of counsel to support his assertion that his plea was involuntary because he did not know what sentence would be imposed [Doc.1 at 5]. He contends that his attorney told him "one thing" and then after he signed the Plea Agreement he "experienced something totally different." Id. Petitioner does not explain what was "different," but from reviewing the entire petition the Court assumes that Petitioner means that he received a longer sentence than he expected [CV Doc. 1 at 8]. In his Motion, Petitioner alleges that his attorney informed him that he would receive a 36-month sentence but that he could be sentenced to as little as 24-months incarceration. Id.

Petitioner's assertions are not credible in light of his testimony in the criminal proceeding and the findings of the Court. Petitioner fails to demonstrate that the Plea Agreement was entered into unknowingly or involuntarily or that "but for counsel's errors" he would not have plead guilty, therefore, Claim One should be denied.

### Claim Two: Ineffective Assistance Of Counsel

In Claim Two, Petitioner alleges that his attorney abused the attorney-client privilege and confidentiality. He claims that his attorney did not have his "best interests at hand . . . attacked him in court with charges that were not previously added and made recommendations to the Judge for more time than what had been discussed with [him]." He further claims that his attorney "brought out" charges against him that he "was told would not count against [him]"

7

[CV Doc. 1 at 7].  The government it its response contends that Petitioner's attorney did not reveal any privileged or confidential information [Doc. 8].  The government states that when it contacted Petitioner's attorney regarding the instant motion, Petitioner's attorney, Kenneth Gleria, refused to assist the government in defending this claim.

Petitioner's allegations are unsupported and conclusory assertions that his attorney was ineffective.  The transcripts from the plea and sentencing hearings do not support Petitioner's claims that his attorney did anything other than pursue the most lenient sentence possible in light of the information compiled in the PSR.  To the contrary, the record reflects that Mr. Gleria specifically attempted to persuade the Sentencing Judge to sentence Petitioner to a more lenient sentence based on proposed sentencing guidelines [SH Tr. 2:22-25; 3:1-25].

Petitioner entered into the Plea Agreement on October 28, 2010 [CR Doc.12].  The PSR was published on January 21, 2011 [CV Doc.8 at 6].  The PSR reflected a total offense level of 20 and a criminal history category of IV resulting in an advisory guideline range of 51 to 63 months [PSR at 19].  On March 7, 2011, Petitioner's attorney filed a Sentencing Memorandum "Memorandum" [Doc. 21] requesting that the Court apply the January 19, 2011 Proposed Amendments to the Sentencing Guidelines in order to sentence Petitioner to not more that 24-months incarceration.  Petitioner's attorney argued that the prior conviction, that resulted in a 16-level enhancement, was over 21-years old.  Id.

At Petitioner's sentencing hearing, Petitioner's attorney addressed the Court and argued for the more lenient sentence requested in the Memorandum.  He further argued that since Congress would likely pass the Proposed Amendments, the Sentencing Judge should apply the proposed guidelines [SH Tr. 3:20-25].  Finally, Petitioner's counsel argued for a variance and

leniency for his client [SH Tr. 4:15-21].  The Court, in sentencing Petitioner, considered the

Sentencing Memorandum, the Plea Agreement, the PSR and the Sentencing Guidelines

[SH Tr. 4:23-25; 5:1-25].  The Sentencing Judge denied Petitioner's request for a reduced

sentence and made a finding that a court is "required to apply the guideline provisions as they

stand at the time of defendant's sentencing" [SH Tr. 5:7-9].  The Sentencing Judge sentenced

Petitioner to 51 months incarceration which is at the low end of the guideline range

[SH Tr. 6:8-12].  Petitioner's sentence is significantly less than the sentence Petitioner faced had

he proceeded to trial.  As previously discussed at the change of plea hearing, Petitioner was

advised of the maximum statutory penalty which included a possibility of twenty (20) years

incarceration and he acknowledged on the record that he understood the penalty [PH 6:1-4].

Petitioner was sentenced to less than five years [SH Tr. 6:8-12].  In light of sentence imposed,

Petitioner fails to demonstrate that his attorney's performance was so deficient that he would not

have agreed to the Plea Agreement.  For the reasons stated, Claim Two should be denied.

### Claim Three: Guilty Plea Allegedly Coerced

In Claim Three, Petitioner makes two different claims to attack his guilty plea which are

repetitive of Claims One and Two.  First, he alleges that his plea was coerced because his

attorney allegedly promised him that he would receive a 36-month sentence or maybe even a 24-

month sentence [CV Doc. 1 at 8].  Petitioner claims that "my lawyer lied to me in order for me to

sign."  Id.  Second, Petitioner claims that he was "medically incapable of knowing better"

because of an alleged nervous condition.  Id.

Petitioner's assertion that his plea was coerced is not credible in light of the Petitioner's

testimony at his plea hearing.  As stated above, Petitioner testified that he was not coerced into

pleading guilty and he readily admitted his guilt [PH Tr. 4:24-25;5:1-8].  Further, the record reflects that Petitioner was informed of the maximum possible sentence associated with his offense [PH Tr. 5:21-25; 6:1-3].  Petitioner was informed that the sentencing judge "was not bound by his plea agreement" and that the judge would "calculate the applicable sentencing range and consider that range and possible departures from that range under the sentencing guidelines along with other sentencing factors set out in the law" [PH Tr. 6:1-15].  The Plea Agreement explicitly set out that the PSR would be prepared, that the parties would be able to review the report and make arguments in support of factual changes or application of the sentencing guidelines [CR Doc. 12 at 3].  In fact, Petitioner's counsel did file a Memorandum seeking a reduced sentence [CR Doc. 21].  At the sentencing hearing, Petitioner's counsel further argued for a variance and requested that the Court impose a reduced sentence [SH Tr. 4:15-21].  Petitioner's allegations that his attorney told him he would receive a shorter sentence than the sentence ultimately imposed is belied by his sworn testimony at the change of  plea hearing.  He offers no credible evidence to support his claim that his attorney's estimation of the possible length of his sentence coerced him to plead guilty.

Petitioner also appears to contend that he has nervous condition thus rendering his plea unknowing and involuntary.  In Claim Three, he makes a one sentence allegation about his "nervous condition" [Doc. 1 at 8].  Petitioner does not allege that he has sought or received treatment for this condition or explain when he was diagnosed with it.  Id.  He does not explain how or why this condition made him unable to enter into his plea voluntarily or knowingly.  Id.

The record reflects that at the plea hearing the Court inquired if Petitioner had been treated recently for any mental illness and that Petitioner's response was "No, never"

[PH Tr. 2:25; 3:1-2].  As discussed above in Claim One, the Magistrate Judge ultimately made a finding that the "plea of guilty is a knowing and voluntary plea" based on the thorough colloquy with the Petitioner [PH Tr. 7:18-25].  Petitioner's complaint about his nervous condition is unsupported and specifically contradicted by the record.  For the foregoing reasons, Claim Three should be denied.

## RECOMMENDED DISPOSITION

The Court concludes that Petitioner is not entitled to any relief with respect to the claims raised in his § 2255 motion.  Therefore, the Court recommends that Petitioner's motion [Doc. 1] be DENIED and that this civil proceeding be DISMISSED WITH PREJUDICE in its entirety.

Within fourteen (14) days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant 28 U.S.C. § 636(b)(1), file written objections to these proposed findings and recommended disposition.  A party must file any objections with the clerk of the district court within the fourteen (14) day period allowed if that party would like to have appellate review of the proposed findings and recommendations.  If objections are not filed, appellate review will not be allowed.

Robeet Hayes Scott
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE